IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| GEORGE WHEELER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-6120-CV-SJ-ODS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION REVERSING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS
AND REMANDING FOR FURTHER PROCEEDINGS**

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability benefits. The Commissioner's decision is reversed and the case is remanded for further proceedings.

1. The ALJ determined Plaintiff retains the residual functional capacity ("RFC") to perform light work. There is insufficient evidence in the Record to support this conclusion. While "a claimant's RFC is a medical question, . . . in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007). Here, however, there is a glaring paucity of medical evidence to support the ALJ's resolution of this medical question.

In December 2010, Plaintiff returned to Dr. Arnold Katz, a rheumatologist he had not seen in seven years. Dr. Katz noted he had previously treated Plaintiff for fibromyalgia and "associated insomnia and chronic fatigue." R. at 254. Obviously, Plaintiff had worked with those conditions before June 30, 2010 (the date he last worked), but Plaintiff reported to Dr. Katz (and testified during the hearing) that those conditions had worsened. Dr. Katz prescribed treatment. He then saw Plaintiff again in March 2011; Plaintiff was "doing well and better. His energy is good. His sleep is satisfactory." In addition, Plaintiff did not show tenderness at any of the eighteen trigger points typically used to diagnose fibromyalgia. Dr. Katz's assessment was

"Fibromyalgia, overall better, Insomnia, improved, Chronic fatigue, doing well."  R. at 248.  In June 2011, Plaintiff reported that his "Sleep remains the same . . . though it still is not good."  His energy was "better than usual" and although he "had no fibromyalgia tender points" Plaintiff "still has days when he has widespread musculoskeletal pain."  Dr. Katz's assessment was "Fibromyalgia, objectively fine, though he still has subjective symptoms" along with insomnia and chronic fatigue.  R. at 246-47.  These are the only medical records related to Plaintiff's severe conditions near or after the alleged onset date.  They do not provide a clear prognosis, much less any basis for ascertaining the most Plaintiff could do despite his limitations.  See, e.g., Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004) (defining what a person's RFC represents).  On remand, additional information must be elicited from Plaintiff's doctors; if this is not possible, some other medical evidence must be obtained that sets forth the limitations Plaintiff likely experienced in light of the medical conditions the ALJ found to exist.

2.  The ALJ must conduct a new credibility assessment.  As part of this reassessment, the ALJ must clarify Plaintiff's work history.  The ALJ found that Plaintiff's "earnings dropped significantly in 2009, a year prior to his alleged onset date."  She found this fact "weighs heavily against the claimant's credibility."  R. at 18.  Plaintiff's decreased earnings might be explained by the fact – pressed by the Commissioner's Brief (at page 8) – that Plaintiff was laid off for a time commencing in March 2009.  While credibility decisions are for the Commissioner to make, the Court does not believe there is sufficient evidence to allow this fact to weigh "heavily" against Plaintiff – particularly when it appears that he was later recalled to work at the sawmill.  R. at 142.

The Commissioner urges the Court to believe that Plaintiff actually stopped working in March 2009 when he was laid off, but this is not supported by the Record.  This is not a case of a person who lost his job and then attributed that lost job to a disability that had not previously prevented him from working.  Plaintiff worked at a sawmill from 2001 to June 30, 2010.  R. at 142.  He testified he stopped working in June 2010 because he could no longer perform the work.  R. at 32.  This is consistent with the ALJ's finding that Plaintiff could no longer perform his past relevant work.  R. at 19.  Even if Plaintiff was laid off at some during his employment at the sawmill, the Record does not presently provide any basis for making that fact relevant.

3. The Court offers this concluding observation. Plaintiff contends the ALJ failed in her duty to develop the Record by not soliciting additional information from his (or other) doctors. The ALJ argues Plaintiff failed in his obligation to prove he is disabled. Both parties are correct, so neither argument can prevail. However . . . the Court cannot help but notice Plaintiff is represented by the same law firm that represented him at the administrative hearing. Plaintiff's counsel could have taken the simple and common step of asking Dr. Katz complete a Medical Source Statement. Of course, so could have the ALJ – but the Court's concern is that Plaintiff's counsel did not do all that could/should have been done to present the case and now, having lost at the administrative level, Plaintiff seeks judicial relief. A modicum of relief will be granted, but the need might have been avoided had counsel done what should have been done. This is something the Court may consider if Plaintiff seeks an award of attorney fees in this matter.

IT IS SO ORDERED.

DATE: August 15, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT